IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIE MCDONALD,                    )
                                    )
    Plaintiff,                      )
                                    )
      v.                          )       CASE NO. 1:23-cv-381-JTA
                                    )          (WO)
MARTIN J. O'MALLEY,                 )
Commissioner of Social Security,    )
                                    )
    Defendant.                      )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Willie McDonald, brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied McDonald's claim for a Period of Disability and Disability Insurance Benefits ("DIB"). The Court construes McDonald's brief in support of his Complaint (Doc. No. 10) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint (Doc. No. 15) as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 11, 12.)

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that McDonald's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.    PROCEDURAL HISTORY AND FACTS

McDonald is an adult male with a high school education and prior work experience as a store laborer, fast food cook, and warehouse worker. (R. 52–55, 290, 310.)[2] He alleged a disability onset date of October 1, 2019, due to learning disability, chronic back issues, chronic carpal tunnel, leg pain, spinal cord deterioration, and failed back surgery. (R. 264, 289.)

On April 1, 2021, McDonald filed a Title II application (42 U.S.C. §§ 401, *et seq*.) for a period of disability and DIB. (R. 264.) McDonald's claim was denied initially and upon reconsideration. (R. 136, 142.) McDonald requested an administrative hearing on April 21, 2022. (R. 146.) Following an administrative hearing, the Administrative Law Judge ("ALJ") denied McDonald's request for a period of disability and DIB in a decision dated November 2, 2022. (R. 36.)

McDonald requested review by the Appeals Council, and it denied review. (R. 17.) Then, McDonald requested the Appeals Council reopen the decision to reconsider in light of new evidence. (R. 8.) The Appeals Council denied reopening the case. (R. 10.) Consequently, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted)

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 9.)

("When as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] reviews[s] the ALJ's decision as the Commissioner's final decision.").

On June 14, 2023, McDonald filed this action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 10, 15, 16.) This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). The court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (citations omitted). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of

fact and are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for DIB must prove that he is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 405.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds

that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy

that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("The burden then shifts to the Secretary to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."). To determine the existence of other jobs which the claimant can perform, the ALJ may rely on the testimony of a vocational expert ("VE"). *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that McDonald had not engaged in substantial gainful activity since the alleged onset date. (R. 28.) The ALJ determined that McDonald suffers from the following severe impairments that significantly limit his ability to perform basic work activities: back and neck disorder, neuropathy, obesity, depression, anxiety, and learning disorder. (R. 28–29.) Nevertheless, the ALJ concluded that McDonald does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 29.)

After consideration of the record, the ALJ determined that McDonald has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1467(a), except

> [McDonald] is limited to occasionally climbing ramps and stairs, and never climbing ladders, ropes, or scaffolds. He is able to occasionally balance, stoop, kneel, crouch, and crawl, and needs a handheld assistive device for all ambulation. He can never be exposed to unprotected heights or moving mechanical parts. [McDonald]'s ability to understand, remember, and apply information and concentrate, persist, and maintain pace would be limited to performing simple and routine and some detailed but not complex tasks. He

can frequently interact with supervisors and coworkers, and occasionally with the public, and handle occasional changes in a routine work setting.

(R. 31.) In determining the RFC, the ALJ found that McDonald's statements regarding the intensity, persistence, and limiting effects of his symptoms are "not entirely consistent with the medical evidence and other evidence of record." (R. 32.)

Nevertheless, the ALJ concluded, considering McDonald's age, education, work experience, and RFC, he is not capable of performing his past work as a store laborer, fast food cook, or warehouse worker. (R. 35.) However, the ALJ determined that there are a significant number of jobs in the national economy that McDonald can perform. (R. 35.) Based on the testimony of a VE during the hearing, the ALJ determined that McDonald could perform the requirements of three representative occupations, including laminator, hand mounter, and document preparer. (R. 36.)

The ALJ further concluded that McDonald had not been under a disability from September 29, 2020, to November 2, 2022, the date of the ALJ decision. (R. 36.) The ALJ found that based on the application for a period of disability and DIB, McDonald is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 36.)

## V.   DISCUSSION

McDonald presents four arguments in this appeal. (Doc. No. 10 at 1.) First, he argues the ALJ failed to meet the fifth-step burden because of flawed testimony by the VE and reliance on an obsolete job. (*Id.* at 8, 10–11.) Second, McDonald argues the ALJ failed to properly analyze any upper extremity limitation or the combination of all impairments when determining his RFC. (*Id.* at 12.) Third, he argues the ALJ failed to comply with 20

C.F.R. § 404.1520c because the ALJ did not address a medical opinion from Robert Hannahan, M.D. (*Id.* at 14.) Fourth, McDonald argues the ALJ failed to properly apply the pain standard. (*Id.*) The Court addresses each argument in turn.

A.      Fifth-Step Finding

During the fifth step of the evaluation process, the ALJ must show "'the existence of ... jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "[T]he critical inquiry at step five is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments, and the ALJ can consider both job data drawn from the [Dictionary of Occupational Titles ("DOT")] as well as from the testimony of the VE in making this determination." *Washington*, 906 F.3d at 1360. "'Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ].'" *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (citation omitted). *See also Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number."). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence[.]" *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Most importantly, "[t]he question … is not whether the [VE's] *testimony* is supported by substantial evidence. It is whether the ALJ's *decision*

is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) (emphasis in original).

Once the ALJ makes the required showing, the burden shifts back to the claimant to show that he is unable to perform the jobs suggested by the ALJ. *Washington*, 906 F.3d at 1359. "Although the burden temporarily shifts at step five, the overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Id*. (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) (internal quotations omitted)).

Here, the ALJ relied on the testimony of a VE. During the hearing, the ALJ asked the VE whether there is any work in the national economy that a claimant with McDonald's RFC, age, education, and work experience could perform. (R. 75.) The VE responded with three jobs: (1) laminator, (2) hand mounter, and (3) document preparer. (R. 76.) The VE testified there are 66,100 jobs in the national economy for the job of laminator; 21,100 national jobs for the job of hand mounter; and 46,000 national jobs for the job of document preparer. (R. 76.) The VE cited specific DOT codes for each job presented. (*Id*.)

      1.    VE's Testimony

When determining national job numbers, the VE may consult the DOT to determine the type of job a claimant can perform. *See Goode*, 966 F.3d at 1281. The DOT does not contain job number estimates, so the VE must then consult other sources, like the Occupational Employment Quarterly, which is compiled by a private organization called U.S. Publishing. *Id*. However, many of these sources use Standard Occupational Classification ("SOC") codes to organize their data. *Id*. There is not a one-to-one match

between the DOT codes and the SOC codes. *Id*. Because of this, the SOC codes may encompass multiple DOT codes. *Id*. Therefore, after figuring out the total number of jobs for a given SOC code, the VE must take "an additional step to approximate how many of those are the specific job or jobs that the claimant could perform." *Id*. at 1283.

McDonald argues the VE's job number estimates are overinflated because the VE cited numbers from the SOC codes and failed to estimate how many of the jobs align with the DOT codes identified. (Doc. No. 10 at 9.) The Commissioner responds that even if the VE gave flawed testimony, McDonald, or his representative, did not alert the ALJ to the flawed testimony either during the hearing or after the hearing concluded. (Doc. No. 15 at 8–9.) As such, the Commissioner avers, the ALJ properly relied on the uncontroverted VE testimony and therefore his decision is supported by substantial evidence. (*Id*. at 8.)

In the Eleventh Circuit, courts are limited to reviewing "the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). "Under the substantial-evidence standard, a court looks to an *existing administrative record* and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted) (emphasis added).

> And when the Appeals Council denies review, as here, [the district court's] review is limited to deciding whether the ALJ's decision was supported by substantial evidence and may not decide the facts anew. *See Winschel*, 631 F.3d at 1178. Thus, [the district court] must look only to the evidence that was presented to the ALJ, and not evidence that was subsequently presented to the district court …. *See Falge*, 150 F.3d at 1323.

*Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 320 (11th Cir. 2021). Furthermore, district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim because it is not a final decision within the meaning of § 405(g). *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003); *see also* 20 C.F.R. § 404.903(l).

Here, McDonald contends that other evidence, which was not presented to the ALJ or Appeals Council or included in the administrative record, shows that the VE's testimony overstated job estimates. During the hearing, McDonald did not present this evidence to the ALJ, nor object to the VE's testimony, nor even inquire into the VE's methodology. (R. 73-77.) In fact, McDonald's non-attorney representative stipulated to the VE's qualifications to testify and did not object to him testifying as the VE. (R. 73.) Nor did McDonald submit any new evidence about incorrect job numbers to the ALJ after the hearing, even though the ALJ extended the deadline to submit new evidence. (R. 77-78.) Further, McDonald did not submit any evidence about incorrect job numbers to the Appeals Council before the Council rendered its decision.[3] (R. 11, 259, 381.) Thus, the only evidence before the ALJ and Appeals Council, *i.e.*, the only evidence in the existing administrative record, about job numbers was the uncontroverted testimony of the VE. Because the VE's testimony is the only evidence regarding the number of jobs available in the national economy in the existing administrative record, the Court is foreclosed from

---

[3] Although McDonald did eventually alert the Appeals Council to the potentially flawed job number estimates, the new evidence was presented in a request to reopen the case after the Appeals Council denied review. (R. 3–9.) Because the decision to deny McDonald's request was not a final decision within the meaning of § 405(g), this Court does not have jurisdiction over the Appeal Council's refusal to reopen a claim. *See Cash*, 327 F.3d at 1256.

considering the other evidence presented by McDonald. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (finding the court was foreclosed from considering the data in the occupational employment statistics on appeal and was left with the VE's testimony when the claimant did not present occupational employment statistics to the ALJ or object to the VE's testimony and stipulated that the VE was qualified to testify); *Bacon*, 861 F. App'x at 320 ("Furthermore, because the VE's testimony is the only evidence regarding the number of jobs available in the record, this Court is foreclosed from considering other evidence suggested by Bacon in the district court and on appeal.") (citing *Falge*, 150 F.3d at 1323).

Bearing in mind the Court must only consider the evidence in the existing administrative record and the only evidence in the record concerning jobs existing in the national economy is the uncontroverted VE testimony, the Court concludes the VE's testimony established that jobs existed in significant numbers in the national economy, and such testimony constituted substantial evidence to support the ALJ's fifth-step finding. *See Leigh v. Comm'r of Soc. Sec.,* 496 F. App'x 973, 975 (11th Cir. 2012) (finding the ALJ's decision, which relied on VE testimony, was supported by substantial evidence when claimant "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion").

Lastly,[4] in arguing that this case should be remanded due to overstated job estimates by the VE, McDonald implausibly relies on the Eleventh Circuit's decision in *Goode*. (Doc.

---

[4] In his reply brief, McDonald argues for the first time that the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103, 112 (2000) precludes waiver of issues that are not brought administratively,

No. 10 at 7-10.) In *Goode*, the Eleventh Circuit reversed and remanded the ALJ's decision, in part, because it found the VE's testimony about available jobs lacked reliability. *Goode*, 966 F.3d at 1285. Specifically, the Circuit noted the VE gave overinflated job numbers that the claimant could perform because he used the wrong SOC group code and failed to "take an additional step to approximate how many of those are the specific job or jobs the claimant could perform." *Id*. at 1283. Particularly, in *Goode*, the Circuit noted "[t]his is not a case in which the claimant failed to challenge or question the [VE's] methodology or job numbers" as the record showed that the claimant's "attorney repeatedly questioned the [VE] regarding his flawed testimony, expressing multiple times to the ALJ that he did not find the testimony persuasive or credible …." *Id*. at 1284, n.3. Unlike *Goode*, neither McDonald nor his representative challenged or questioned the VE regarding his testimony during the hearing in this case. (R. 77.) Nor did McDonald or his representative inquire of the VE as to the methodology used to calculate the job numbers. Consequently, *Goode* is factually distinguishable from this case. *See Bacon*, 861 F. App'x at 320 (finding the VE's testimony "was neither clearly and unmistakably wrong on its face, nor was it internally inconsistent and incomplete" because "unlike *Goode*, this was a case in which the claimant failed to challenge or question the VE's methodology or job numbers.") (citation omitted).

---

that the court should consider the new job number estimates because he was not represented by an attorney during the administrative proceedings, and 20 C.F.R. § 404.1566(d) requires an ALJ take administrative notice of publicly available data when making his fifth step determination. (Doc. No. 16 at 4, 6-9.) However, "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court." *Riechmann v. Fla. Dep't of Corr*., 940 F.3d 559, 579 (11th Cir. 2019) (citations omitted). Accordingly, the Court does not address these arguments.

2.     Obsolete Job

McDonald next argues the ALJ's decision was not supported by substantial evidence because the job of document preparer is obsolete. (Doc. No. 10 at 12.) According to the DOT code, a document preparer readies documents "for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices." *249.587-018 Document Preparer, Microfilming*, United States Department of Labor, Office of Administrative Law Judges, Dictionary of Occupational Titles, https://www.dol.gov/agencies/oalj/PUBLIC /DOT/REFERENCES/DOT02C (last accessed Sept. 17, 2024). Although McDonald cites persuasive authority from outside this circuit to support his argument, the Eleventh Circuit has recognized that "[a]lthough the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools." *Goode*, 966 F.3d at 1281. Moreover, declaring the job of document preparer obsolete would require the Court to "decide the facts anew, reweigh the evidence, [and] substitute our judgment for that of the ALJ." *Goode*, 966 F.3d at 1280, which the Court cannot do.

Even if the Court had the ability to declare the job of document preparer obsolete, it would not render the ALJ's opinion unsupported by substantial evidence. The ALJ determined there were 66,100 jobs in the national economy for the job of laminator and 21,100 jobs in the national economy for the job of hand mounter. (R. 36.) The Eleventh Circuit has held that as few as 80,000 jobs nationally constituted a sufficient number of jobs. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). Even without the position of

document preparer, the total number of jobs cited by the ALJ is well over 80,000.[5] Therefore, regardless of whether this Court declares the role of document preparer obsolete, the ALJ's fifth-step finding is supported by substantial evidence.

      B.    ALJ's RFC Determination

McDonald avers that the ALJ failed to analyze all of the relevant evidence. (Doc. No. 10 at 13.) McDonald claims that (1) the ALJ failed to account for upper extremity limitations due to his neck disorder that would affect his ability to reach, handle, finger, or feel; and (2) the ALJ failed to mention his chronic pain syndrome, post-laminectomy syndrome, sleep apnea, fatigue, or chronic carpal tunnel. (*Id.*)

The RFC assesses the claimant's remaining ability to do work despite his impairments and any related symptoms. 20 C.F.R. § 404.1545(a)(1). When assessing a claimant's RFC, the ALJ must consider "all impairments, severe and non-severe." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (citing *Bowen v. Heckler*, 748

---

[5] Notably, the "Eleventh Circuit has 'never held that a minimum numerical count of jobs must be identified in order to constitute work that exists in significant numbers under the statute and regulations." *B.S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-77, 2021 WL 1598210 at *3 (M.D. Ga. Apr. 23, 2021) (quoting *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 934 (11th Cir. 2015) (internal quotation marks omitted)) (finding 23,800 jobs in national economy constituted a "significant number"); *see Valdez*, 808 F. App'x at 1010 (noting that the Eleventh Circuit has held that 78,000 jobs and other jobs with similar numbers amounted to "substantial evidence to support the ALJ's finding on step five"); *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) ("The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number.... We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers."). The Court here is not finding that 80,000 jobs is the threshold; it is merely using that number as an example and finding that the number of jobs identified by the VE in this case are sufficient to constitute a significant number.

F.2d 629, 634–35 (11th Cir. 1984)). The ALJ determines RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).[6]

First, the ALJ's opinion considered upper extremity limitations. The ALJ found that although McDonald had a documented history of neck disorder, the treatment record indicated that he has "normal motor strength and tone, normal sensation, and normal movement of *all extremities*." (R. 32 (*emphasis added*).) This conclusion is supported by substantial evidence in the record. As the ALJ pointed out, multiple medical providers noted normal strength, sensation, and range of motion in his upper extremities. (R. 623, 629, 635, 641, 647, 654, 660, 706, 711, 716, 720, 724, 729, 872-873, 1070-1071, 1077.) Although the record does show that McDonald complained that using his arm caused thoracic pain (R. 1059), McDonald cites no evidence for his contention that his neck disorder would affect his ability to reach, handle, finger, or feel. (Doc. No. 10 at 13.) Therefore, the ALJ properly considered McDonald's upper extremity limitations.

Second, the ALJ sufficiently addressed McDonald's chronic pain syndrome and post-laminectomy syndrome.[7] Although the ALJ did not call McDonald's conditions by their names, he did note after McDonald underwent a transforaminal interbody fusion (a type of back surgery), he still reported "chronic left lower extremity pain." (R. 32.) The ALJ discussed McDonald's decision not to have a spinal cord stimulator implanted because

---

[6] Although the ALJ does not need to discuss every piece of evidence, he must consider the claimant's "medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 404.1523(c) and Social Security Ruling 96-8p.

[7] Post-laminectomy syndrome is when a person experiences pain after undergoing a spinal surgery. Seth A. Waldman, MD, *Post-Laminectomy Syndrome*, Hospital for Special Surgery (March 7, 2024), https://www.hss.edu/conditions_post-laminectomy-syndrome.asp.

it had provided minimal relief of his symptoms in the past. (*Id*.) The ALJ then recited all of the other procedures McDonald underwent to relieve his pain, including "trigger point injections, bilateral sacroiliac joint injections, epidural steroid injections, and thoracic medial branch blocks." (*Id*.) Nonetheless, the ALJ concluded that McDonald has the ability to perform less than a full range of sedentary work because he has been treated with medication and injections that showed some indication of effectiveness and had not been recommended for additional surgical intervention. (R. 32–33.) While the ALJ may not have called McDonald's impairments by their medical names, the record indicates that the ALJ fully considered McDonald's chronic pain syndrome and post-laminectomy syndrome.

Although the ALJ did not mention McDonald's sleep apnea, fatigue, or alleged carpal tunnel syndrome, the burden is on McDonald to prove he is disabled. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that [he] is disabled."). A claimant cannot merely cite the existence of impairments, but must also "reveal the extent to which [the impairments] limit [his] ability to work." *Id*. at 1213, n.6; *see also* 42 U.S.C. § 423(d)(1)(A) ("'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment"); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself"); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("the claimant must show the effect of the impairment on her ability to work").

While there is some evidence in the medical record that McDonald suffered from sleep apnea and fatigue (*see* R. 452, 739, 743), McDonald did not mention either on his application for benefits (R. 289) or during the hearing (R. 50–78). Though McDonald mentioned chronic carpal tunnel in his application (R. 289), there is no medical evidence in the record that supports such a claim. McDonald cites to an affidavit signed by a friend and a brief filed by his representative to support his claim of carpal tunnel syndrome. (Doc. No. 10 at 13.)[8] Neither document constitutes medical evidence. Furthermore, McDonald does not cite any evidence in the record that explains how his sleep apnea, fatigue, or alleged carpal tunnel syndrome would impact his ability to do work. (Doc. No. 10 at 13.) Without evidence that these impairments impact his ability to do work, the Court cannot say the ALJ's RFC determination was not supported by substantial evidence.

C.      20 C.F.R. § 404.1520c

McDonald contends the ALJ failed to consider a medical opinion from Dr. Hannahan during his RFC determination in violation of 20 C.F.R. § 404.1520(c). (Doc. No. 10 at 14.) The Commissioner avers that the medical record written by Dr. Hannahan is not a medical opinion as defined by 20 C.F.R. § 404.1513(a)(2). (Doc. No. 15 at 12.)[9]

Even if the Court were to determine that the record written by Dr. Hannahan constituted a medical opinion, the ALJ's failure to discuss the opinion would be harmless

---

[8] McDonald does cite a mention of "ulnar nerve entrapment" in the medical record to support his claim. (Doc. No. 10 at 14.) However, the ulnar nerve is near the elbow and its entrapment is also known as cubital tunnel syndrome, which is distinct from carpal tunnel syndrome. (*Compare cubital tunnel syndrome*, Stedmans Medical Dictionary 878760 *with carpal tunnel syndrome*, Stedmans Medical Dictionary 877830.)

[9] Neither party cites any authority, outside of the regulations, for their positions.

error. "Remand is unwarranted unless an error creates fundamental unfairness or prejudice." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1274, n. 11 (11th Cir. 2024). McDonald bears the burden to show that the ALJ's failure to consider the medical record is harmful. *See Viverette*, 13 F.4th at 1317–18 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). McDonald has not met his burden.

The record at issue advises McDonald to "[l]imit heavy lifting, repetitive movements, sudden movements." (R. 624.) The record continues and advises McDonald to engage in low impact exercise such as yoga, Pilates, Tai Chi, walking, stationary biking, and swimming. (*Id*.) This record from Dr. Hannahan is consistent with the ALJ's determination that McDonald can perform a reduced range of sedentary work, which is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledger, and small tools." 20 C.F.R. § 404.1567(a). McDonald's ability to engage in yoga, Pilates, Tai Chi, walking, stationary biking, and swimming does not contradict the ALJ's RFC finding and McDonald has not shown how he was prejudiced or harmed by the ALJ's failure to discuss the record. Consequently, the Court finds no reversible error.

D.     Pain Standard

Finally, McDonald argues the ALJ's conclusion that his subjective complaints of pain are not entirely consistent with the medical record is not supported by substantial evidence. (Doc. No. 10 at 15.) The Commissioner avers that the ALJ properly evaluated

McDonald's alleged pain and cited substantial evidence to support his conclusion that McDonald could perform a reduced range of sedentary work. (Doc. No. 15 at 15.)

When a claimant alleges disability due to subjective complaints of pain, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Raper*, 89 F.4th at 1277. If a claimant meets this standard, and the ALJ decides not to credit a claimant's testimony as to his pain, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (*per curiam*). The Eleventh Circuit has "held that credibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and [the Court] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). When determining whether a claimant's statements about his pain are credible, the ALJ considers: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; (5) treatment, other than medication, used to relieve pain; and (6) any measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3)(i)–(vi).

Here, the ALJ's assessment of McDonald's pain and other symptoms is supported by substantial evidence. The ALJ determined that "[McDonald's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (R.

20

32.) However, the ALJ found that McDonald's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*.) The ALJ referenced objective medical evidence, hearing testimony, and McDonald's testimony about his daily activities. Specifically, the ALJ noted that treatment records show normal movement and strength for all extremities (R. 623, 629, 635, 641, 647, 654, 660, 706, 711, 716, 720, 724, 729, 872-873, 1070-1071, 1077); no evidence of compressive discopathy (R. 975); treatment with medication and injection that shows some indication of effectiveness (R. 891, 894, 915, 924, 931, 933, 945, 957, 999, 1001, 1019); and no evidence of muscular atrophy (R. 32–33). The ALJ specifically highlighted that no treating physician recommended additional surgical intervention or opined that McDonald had disabling limitations or was unable to work. (R. 33.) Further, the ALJ referenced McDonald's function report where McDonald reported that he was able to prepare his own meals and drive. (R. 33, 324–325.) Finally, the ALJ discussed why he found McDonald able to perform a reduced range of sedentary work when two State agency consultants found he could do reduced range of light work. (R. 34.)

The Court is unpersuaded by McDonald's argument. McDonald cites his subjective complaints of pain, his diagnosis of chronic pain syndrome, and post-laminectomy syndrome as evidence that the ALJ's credibility finding is not supported by substantial evidence. (Doc. No. 10 at 15.) Nonetheless, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's

conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). McDonald has failed to satisfy his burden. Here, the ALJ properly evaluated McDonald's subjective complaints in light of the evidence of record, and the ALJ sufficiently cited evidence in the record for finding that McDonald's statements were not entirely consistent with the record as a whole. McDonald has not shown the absence of substantial evidence supporting the ALJ's conclusion. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (explaining that the appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."). McDonald's mere "disagreement with the interpretation of the evidence" by the ALJ "does not warrant a remand of [his] case." *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014). Accordingly, the Court finds no reversible error.

## VI.   CONCLUSION

For the reasons stated, the Court finds the decision of the Commissioner is supported by substantial evidence and is in accordance with applicable law. Therefore, it is ORDERED as follows:

1.     McDonald's motion for summary judgment (Doc. No. 10) is DENIED.

2.     The Commissioner's motion for summary judgment (Doc. No. 15) is GRANTED.

3.     The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 26th day of September, 2024.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE